199 P.3d 450 (2008)
In the Matter of the MARRIAGE OF Bryan F. KRIEGER, Respondent, and
Marilyn L. WALKER, Appellant.
No. 61219-1-I.
Court of Appeals of Washington, Division 1.
December 29, 2008.
*452 Catherine Wright Smith, Valerie A Villacin, Edwards Sieh Smith & Goodfriend PS, Seattle, WA, Stella Lea Pitts, Stella L. Pitts & Associates PLLC, Seattle, WA, for Appellant.
Robert Charles Kaufman, Attorney at Law, Bellevue, WA, for Respondent.
AGID, J.
¶ 1 Marilyn Walker appeals the trial court's order setting child support at the advisory amount for combined monthly incomes over $7,000. She contends that limiting child support to the advisory amount fails to meet the children's needs and does not consider the totality of the parents' financial circumstances. Specifically, she argues that the trial court erred by: (1) requiring that she demonstrate an extraordinary need for an award above the advisory amount, (2) finding that the father's "non involvement" with the children is not a basis for additional support, and (3) finding that she failed to demonstrate that the children's standard of living would be affected by a departure from the advisory amount. There is no authority that requires a showing of extraordinary need to award support above the advisory amount. In addition, the record demonstrates that the father's lack of residential time with the children increased Walker's financial burden and that awarding the advisory amount lowered the children's standard *453 of living and did not adequately account for the father's standard of living. We therefore hold that the trial court abused its discretion in setting child support at the advisory amount. Accordingly, we reverse.

FACTS
¶ 2 Marilyn Walker and Brian Krieger divorced in 2002. At the time of the dissolution they had two children, ages five and one. Under the 2002 dissolution decree and parenting plan, Walker was designated as the decision-maker on major decisions involving the children. The parents' combined monthly net income exceeded $7,000, and they agreed to extrapolate child support. The court ordered Krieger to pay $4,500 monthly which included $2,500 in spousal maintenance and a $2,000 transfer payment, out of which $1,000 was allocated for child support and $1,000 was allocated for work-related child care expenses. The order provided that child support would be adjusted every two years.
¶ 3 In 2003, the court ordered an adjustment on Walker's motion. Instead of allocating $1,000 for child support and day care expenses, the court ordered that Krieger's monthly transfer payment be reduced to $1,341.74 and required him to pay his proportionate share of the children's day care and extraordinary health expenses.
¶ 4 In 2005, Walker moved for an adjustment because her income had decreased when her monthly spousal maintenance award terminated. She argued that the court should increase the transfer payment using extrapolation because Krieger's monthly income alone exceeded $7,000.[1] She also submitted evidence of the children's yearly budget, which did not include "most food, a home to live in, utilities or any portion of the car." This budget detailed expenses for the following categories: daily living (which included child care), school costs, entertainment, health, vacations, recreation, dues/subscriptions, personal, and additional education costs, and showed expenses exceeding $1,900 per month. She claimed that this amount was in addition to the family's monthly expenses of $3,725.69 for housing, food, and transportation.[2]
¶ 5 Krieger objected to Walker's proposed adjustment and argued instead that the amount of support should be set according to the child support guidelines. He asserted that his income was $8,112.38 and, based on the economic table, his support obligation should be $1,018.58. Alternatively, he argued that if he was required to pay the extrapolated award, he should not also be required to pay his proportionate share of certain other expenses such as day care and health care because they were already included in Walker's budget.
¶ 6 A court commissioner rejected Krieger's arguments, extrapolated an increased support obligation and ordered him to make a monthly transfer payment of $2,182.88. This amount did not include work-related day care, counseling, medical, dental, and orthodontic expenses, so Krieger was ordered to pay his proportionate share of day care and extraordinary health care expenses. The commissioner denied Krieger's motion for reconsideration, and the court denied his motion to revise the commissioner's ruling.
¶ 7 Krieger appealed and we reversed based on the Supreme Court's decision in In re Marriage of McCausland,[3] which held that the extrapolation formula may not be used to exceed the economic table in the child support schedule.[4] We concluded that "the findings made by the [trial] court do not establish that the extrapolated award of child support is necessary to meet the needs of the parties' children."[5] We then remanded for recalculation of child support without using extrapolation because the record was not clear that the trial court would have imposed *454 the same level of support without using it. In doing so, we "emphasize[d] that the trial court retains discretion to set child support above the advisory amounts upon entry of sufficient findings."[6]
¶ 8 On remand, the parties appeared in the trial court before a judge who had not reviewed the earlier adjustment hearing before the commissioner. In addition to the evidence she presented during the hearing before the commissioner, Walker presented evidence that the parties agreed to modify the parenting plan to reflect Krieger's choice not to spend any residential time with the children. She argued that because he did not spend any residential time with the children, she carried a greater burden of the family's expenses.
¶ 9 The trial court determined Krieger's monthly income to be $9,843 and Walker's income to be $5,247. The court concluded that Walker failed to produce evidence "to support the `sufficient findings' that must be present before this court may exercise its discretion and award support above the standard calculation." The court also concluded that the children's additional expenses beyond their daily living expenses "do not constitute the type of extraordinary expenses and do not create the type of extraordinary need that must exist before this court may deviate upward from the standard calculation." The court further found that Walker "failed to demonstrate a standard of living that will be affected by any increase or decrease from the standard calculation contained in the economic table" and that Krieger's "non-involvement" with the children was not "a basis to deviate upward from the advisory level of child support."
¶ 10 The court then determined that the "standard calculation" of child support based on the advisory amount was $972.56 and ordered Krieger to pay child support of $1,000, in addition to his proportionate share of work-related day care and extraordinary health expenses. The trial court also found that Krieger had overpaid child support in the amount of $25,246 since February 2006 and ordered that he recover this overpayment in the form of a "credit" of $200 per month against all future support payments. This reduced the monthly transfer payment to $800. Walker appeals.

DISCUSSION
¶ 11 We review child support adjustments for a manifest abuse of discretion.[7] A court abuses its discretion if its decision is "based on an incorrect standard or the facts do not meet the requirements of the correct standard."[8] We will not substitute our own judgment for that of the trial court where the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances.[9]
¶ 12 The child support schedule statute, chapter 26.19 RCW, was enacted "to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living."[10] The trial court determines the basic child support obligation from an economic table in the child support schedule, which is based on the parents' combined monthly net income and the number and age of the children. The table ends at a combined monthly net income level of $7,000.[11]
¶ 13 The trial court determines child support based on the "standard calculation," a figure that is the "presumptive amount of child support owed as determined from the child support schedule."[12] But when the income exceeds $7,000, the figures in the child support schedule are not "presumptive" and are instead "advisory."[13] In these cases, the court may either (1) set support at *455 an "advisory amount," which is an amount set for incomes between $5,000 and $7,000 on the economic table or (2) exceed the advisory amount "upon written findings of fact."[14] As clarified in McCausland, the court may not determine this amount by extrapolation but should consider, at a minimum, the parents' standard of living and the children's special medical, educational, or financial needs.[15]
¶ 14 These factors were set forth in In re Marriage of Daubert,[16] and In re Marriage of Rusch.[17] In Daubert, the court held that findings in support of an award above the advisory amount "must explain why the amount of support ordered is both necessary and reasonable."[18] The court explained that to determine whether the support is necessary, courts should consider "the special medical, educational and financial needs of the children,"[19] and to determine whether the support is reasonable, courts should consider the parents' income, resources, and standard of living.[20]
¶ 15 The court in Daubert recognized that orthodontia, summer camp, college test preparation classes, computers, and travel for extra-curricular activities or cultural experiences are within the appropriate bases for additional support under RCW 26.19.080.[21] But the court reversed an order of additional child support based on these needs because the record did not contain evidence of the future need for these expenditures or cost estimates, and the trial court made no findings about the necessity and reasonableness of these additional expenses.[22] The mother requesting the support had identified only missed camps, classes, and trips resulting from a lower support award, and asserted that the children needed orthodontia and better computers without including specific cost amounts for these needs.[23]
¶ 16 Here, the trial court made the following findings:
The court rejects the respondent's [Walker's] contention that such non-involvement on the part of the petitioner constitutes a basis to deviate upward from the advisory level of child support derived from the economic table[.]
. . . The court acknowledges that Marriage of McCausland, 159 Wash.2d 607, 152 P.3d 1013 (2007)[,] authorizes a trial court, under appropriate circumstances, to exceed the economic table in calculating child support. However, the court finds that respondent has failed to offer sufficient facts and evidence to support the `sufficient findings' that must be present before this court may exercise its discretion and award support above the standard calculation[.]
. . . The court reviewed `Exhibit A' [Walker's budget] and finds the expenses listed therein do not constitute the type of extraordinary expenses and do not create the type of extraordinary need that must exist before this court may deviate upward from the standard calculation. The court finds that the respondent has failed to demonstrate a standard of living that will be affected by any increase or decrease from the standard calculation contained in the economic table[.]

I. Extraordinary Need
¶ 17 Walker first contends that the trial court erroneously required a showing of extraordinary need for a support award above the advisory amount. She argues that unlike *456 the standard calculation for incomes under $5,000, the advisory amount for incomes above this amount is not presumptive; thus, a party requesting a greater amount should not be required to justify a deviation from this amount. She notes that our courts have recognized that when a trial court "couch[es] its order in terms of `deviation,' the trial court inappropriately narrow[s] the scope of its inquiry and contravene[s] legislative intent [to allow the court to exceed the advisory amount upon written findings]."[24] Walker contends that under the correct standard she sufficiently established that she has expenses for the children's needs that justify support above the advisory amount. Specifically, she asserts that additional support is necessary for expenses totaling approximately $1,200 monthly for school supplies, school trips, school-required computer software, entertainment, health club dues, health insurance copayments, nonprescription medicines, vacations, sports activities, music lessons, pets, birthday parties, and personal items such as clothing and haircuts.
¶ 18 We agree that the trial court did not apply the correct standard. While the trial court cited McCausland and correctly stated that sufficient findings must support an award above the advisory amount, the court effectively applied the deviation standard by requiring a showing of "extraordinary need." By asserting that extraordinary need must exist before the court could set an award above the advisory amount, the court impermissibly narrowed the scope of needs and expenses that can support such an award. As the court explained during the hearing:
[W]e don't have extraordinary transportation costs because the parents live across the country from each other.
. . . We don't have private school tuition that's way over the horizon. We certainly don't have special needs children in the sense of 24/7 nursing care or developmental disability issues that require special ed or, heaven forbid, you know, child leukemia.. . .
. . . [A]nd I'm not seeing what's outside of what you normally have to do to take care of your kid.
¶ 19 Neither the statute nor the case law limits support awards above the advisory amount to those based on "extraordinary" needs, as the trial court here applied that term. The statute provides only that the court has discretion to award an amount above the advisory amount "upon written findings," and the case law requires only that the additional support be necessary and reasonable, in light of the parents' financial circumstances.[25]McCausland recognized that at a minimum, the trial court should consider the children's "special medical, educational, or financial needs," but specifically noted that the determination was not limited to these factors.[26] And in our first opinion on remand to the trial court, we "emphasize[d] that the trial court retains discretion to set child support above the advisory amounts upon entry of sufficient findings."[27] We did not define "sufficient findings" nor did we narrow the range of expenses that could support such an award.
¶ 20 In fact, in Daubert, the court recognized that expenses for school-related costs and trips, extra-curricular activities, cultural experiences, and computers were appropriate bases for additional support.[28] These are the same kinds of expenses for which Walker seeks additional support but which the trial court found could not justify an award above the advisory amount because they were not "extraordinary." Thus, the trial court's finding was error because it applied the wrong standard and disregarded legitimate expenses included in Walker's calculations. We hold that these additional expenses may support an award above the advisory *457 amount. Accordingly, we remand for the trial court to recalculate the support award and consider the children's additional needs, in light of both parties' income, resources, and standard of living.[29]
¶ 21 Krieger argues that the expenses included in Walker's budget for which she seeks additional support fall within the realm of basic needs and are already accounted for in the transfer payment.[30] But the record demonstrates that the transfer payment barely covers his share of the children's basic food, shelter, and transportation expenses, let alone these additional expenses. According to Walker's budget, the children's monthly expenses for basic needs of housing, utilities, food, and transportation are at least $1,800.[31] Thus, Krieger's proportionate share of these expenses would be a little over half of that amount, or approximately $1,000, which is the total amount of the current child support award.[32] As such, it obviously does not cover the additional expenses listed in Walker's budget which total $1,150 monthly.

II. Lack of Residential Time With the Children
¶ 22 Walker next argues that the trial court erred by concluding that Krieger's "non-involvement" with the children is not a basis for an award above the advisory amount. She argues that because Krieger shares no residential time with the children, she disproportionately bears the brunt of the day-to-day expenses for food, entertainment, recreation, and other incidentals, on top of her share of the basic needs expenses. We agree.
¶ 23 Because the children spend all of their residential time with Walker, she necessarily carries an increased financial burden relative to Krieger, created by his choice not to spend any time with them. As a result of this choice, Walker bears all of the children's expenses for recreation, entertainment, extra-curricular activities, and other incidentals simply because she is the one responsible for them at all times. The trial court's decision rewards Krieger for his abdication of responsibility for the children by improving his financial position at Walker's expense. It is therefore relevant to the parties' financial circumstances, which is a necessary factor in the court's determination of whether to award additional support. The trial court's finding to the contrary was error. We hold that Krieger's failure to spend any residential time with the children may provide a basis for a support award above the advisory amount and remand for the trial court to consider this factor in its recalculation of the support award.

III. Standard of Living
¶ 24 Walker further argues that the trial court erred by finding that the children's standard of living would not be affected by awarding the advisory amount. She argues that awarding only the advisory amount decreases the children's standard of living because they can no longer participate in activities they have enjoyed in the past or would be able to participate in if the parties were married. She also argues that this finding ignores Krieger's income, pointing out that the parties' combined income is more than double the income listed for the advisory amount. She relies on case law recognizing that child support is "designed with the primary goal of preventing a harmful reduction in a child's standard of living,"[33] and is not designed to cover only the child's "subsistence" but to "sustain the child *458 at a standard of living concomitant with her divorcing parents' incomes."[34]
¶ 25 We agree that the advisory amount does not reflect both parent's incomes and standard of living. Child support orders must not only be adequate to meet a child's basic needs, but should also "provide additional child support commensurate with the parents' income, resources, and standard of living."[35] Here, the record demonstrates that awarding the advisory amount leaves Walker to bear all of the children's expenses beyond those of basic living, despite the fact that Krieger's income is almost double hers and that he enjoys a higher standard of living than the advisory amount would allow his children. As a result, the children's standard of living reflects only Walker's income and is lower than it would be if the parents were still married. Thus, limiting support to the advisory amount impacts the children's standard of living, and the trial court's finding to the contrary was error.
¶ 26 Nor does awarding the advisory amount comply with the Legislature's intent that the support obligation "be equitably apportioned between the parties."[36] According to the record, Walker's monthly net income is $5,246.95, which, even when combined with the $800 support payment, barely covers her total household and child related expenses of approximately $5,625.00.[37] If Krieger's child support obligation is limited to the advisory amount, it is only a fraction of his monthly net income of $9,843. This disparity is compounded by the fact that he spends no residential time with the children and incurs no additional expenses apart from court-ordered support. Thus, the trial court's child support award of the advisory amount failed to consider the relative financial circumstances of both parents, which was error. We remand for the trial court to recalculate support to ensure that it maintains the children's standard of living at a level commensurate with that of both parents and is equitably apportioned between them.
¶ 27 Krieger argues that when this court reversed the previous order of support, we "made clear that all of the `bases' recited by the family law commissioner in support of exceeding the advisory amount of child support were totally unrelated to the criteria that must be present for a court to exceed the economic table." While we reversed the trial court's order to the extent that it was based on extrapolation, we did not hold, as Krieger suggests, that there was no other valid basis for the trial court's support award. Rather, we could not tell from the record before us whether the trial court would have ordered the same support award without using extrapolation and remanded for the trial court to recalculate support without using extrapolation and enter appropriate findings for an award set above the advisory amount.[38] And while we did state that "[m]ost of the court's findings have nothing to do with the children's needs or other valid considerations under McCausland,"[39] those findings are not the basis for Walker's arguments on appeal, with the exception of the finding that she "has virtually 100% of the burden for the children's activities." As explained above, we hold that this factor is relevant to the trial court's determination and may provide a basis for an award above the advisory amount.[40]

IV. Overpayment of Support
¶ 28 Walker next argues that the trial court erred by deducting $200 from the *459 monthly support payment for Krieger's overpayment of past child support. She contends that awarding Krieger judgment in this amount was an abuse of discretion because it causes a substantial hardship on the children's household.
¶ 29 Our courts recognize a limited right to reimbursement for overpayment of child support after a trial court's support order has been reversed and modified on appeal.[41] The trial court has discretion to authorize such relief taking into account "the amount of the excess payments, whether the payments have already been spent in support of the child, and whether the sum is readily available for restitution without causing undue hardship upon the receiving parent or the child."[42]
¶ 30 We adopted a limited right of reimbursement for overpayment of child support in In re Marriage of Stern,[43] where we relied on the reasoning of the Maryland court in Rand v. Rand.[44] The Rand court recognized that because the right to support arises from public policy considerations, child support judgments are inherently different from judgments arising out of private claims.[45] Thus, the court refused to recognize an unconditional right of total recoupment after a child support order was reversed on appeal.[46] As the court explained:
[I]n such a situation, the onus of the remedy would fall upon the child, not the receiving parent. The existence of a right of recoupment, in that instance, would be entirely inconsistent with the obligation imposed upon the parent by law, because it would require that, during the recoupment period  the interval of time during which the paying parent reduces the periodic payment below the amount last ordered  the child would be receiving less than that found necessary for his or her support; and thus, the recouping parent would not be fulfilling his or her statutory obligation.[[47]]
The court concluded:
Whether, and to what extent, the receiving parent in fact used the `overpayment' for the support of the child and has the funds from which to permit a proper recoupment without depriving the child, is a determination that must necessarily be made by the trial court, exercising its discretion upon the relevant evidence before it.[[48]]
¶ 31 Here, Walker argued that the Stern/Rand factors weighed against awarding judgment for overpayment of support. She asserted that the excess payments had already been spent to support the children and that she did not have funds readily available to pay the judgment because all of it went to support the household. Thus she argued, deducting it from the child support payment would create substantial hardship on the children's household. She relied on the budget she presented, noting that it accounted for "every penny" of support, which was spent on the children. She argued that to take an additional $26,000 out of her total income of $63,000 would decrease her income by almost half and create a substantial hardship. Krieger urged the court to order the total amount of overpayments, arguing that Stern allows for overpayment, if properly structured.
¶ 32 We agree with Walker that the trial court's repayment order created a substantial hardship on the children by further decreasing an already reduced child support award and was therefore an abuse of discretion. But we also recognize that overpayment either may no longer be an issue or may not result in the same hardship once the trial court recalculates the support award in accordance with this opinion.[49]

*460 V. Attorney Fees

¶ 33 Finally, Walker requests that we award her attorney fees based on her need and Krieger's ability to pay. We have discretion to award attorney fees after considering the relative resources of the parties and the merits of the appeal.[50] Here, Walker prevailed on the merits of her appeal, and the record demonstrates that Krieger is in a better position to pay. Thus, we award Walker her reasonable attorney fees, which will be determined by the trial court on remand.
¶ 34 We reverse and remand for the trial court to recalculate the child support and attorney fees' award in accordance with this opinion.
WE CONCUR: BECKER and COX, JJ.
NOTES
[1] She asserted that Krieger's monthly net income was $10,783.01 and hers was $4,140.07.
[2] This amount included $2,575.69 for housing and utilities, $750 for food, and $400 for transportation.
[3] 159 Wash.2d 607, 152 P.3d 1013 (2007).
[4] In re Marriage of Krieger, noted at 138 Wash. App. 1034, 2007 WL 1310597 (2007).
[5] Krieger, 138 Wash.App. 1034, 2007 WL 1310597, at *3.
[6] Id. at *4.
[7] In re Marriage of Booth, 114 Wash.2d 772, 776, 791 P.2d 519 (1990).
[8] In re Marriage of Fiorito, 112 Wash.App. 657, 664, 50 P.3d 298 (2002).
[9] Booth, 114 Wash.2d at 776, 791 P.2d 519.
[10] RCW 26.19.001.
[11] Id.; RCW 26.19.020.
[12] RCW 26.19.011(8).
[13] RCW 26.19.065(3).
[14] RCW 26.19.065(3).
[15] 159 Wash.2d at 620, 152 P.3d 1013.
[16] 124 Wash.App. 483, 496, 99 P.3d 401 (2004), overruled on other grounds by McCausland, 159 Wash.2d 607, 152 P.3d 1013.
[17] 124 Wash.App. 226, 233, 98 P.3d 1216 (2004), overruled on other grounds by McCausland, 159 Wash.2d 607, 152 P.3d 1013. McCausland overruled both Daubert and Rusch to the extent that these decisions approved of extrapolation, but also held that the other factors considered in these cases were proper considerations for the trial court. 159 Wash.2d at 620, 152 P.3d 1013.
[18] 124 Wash.App. at 495, 99 P.3d 401.
[19] Id. at 496, 99 P.3d 401.
[20] Id. at 497, 99 P.3d 401.
[21] Id.
[22] Id. at 497-98, 99 P.3d 401.
[23] Id. at 497, 99 P.3d 401.
[24] In re Marriage of Leslie, 90 Wash.App. 796, 804, 954 P.2d 330 (1998), review denied, 137 Wash.2d 1003, 972 P.2d 466 (1999).
[25] Daubert, 124 Wash.App. at 496-97, 99 P.3d 401; McCausland, 159 Wash.2d at 620, 152 P.3d 1013.
[26] 159 Wash.2d at 620, 152 P.3d 1013.
[27] Krieger, 138 Wash.App. 1034, 2007 WL 1310597, at *4.
[28] 124 Wash.App. at 497, 99 P.3d 401.
[29] 90 Wash.App. at 804, 954 P.2d 330 (If the trial court's findings and conclusions "do not evince such a comprehensive examination, [the order of support] must be vacated and remanded.").
[30] Krieger also argues that the expenses for summer camp are child care costs, which are already covered under his proportionate share of child care expenses. This is a matter to be addressed on remand when the trial court determines which additional expenses are to be included in the support award.
[31] This is half of $3,725.69, which is the total amount of these expenses.
[32] His proportional share of income is 65 percent.
[33] In re Marriage of Bell, 101 Wash.App. 366, 372, 4 P.3d 849 (2000).
[34] P.O.P.S. v. Gardner, 998 F.2d 764, 767 (9th Cir.1993).
[35] RCW 26.19.001
[36] RCW 26.19.001.
[37] This includes $3,725.69 total for food, shelter and transportation; $750 for child care; and $1,150 for additional child-related expenses.
[38] Krieger, 138 Wash.App. 1034, 2007 WL 1310597, at *3.
[39] Id.
[40] Krieger also contends that he is not responsible for counseling costs as agreed to in the parenting plan and that there is no private school tuition for which additional support is necessary. In her 2005 motion for adjustment of child support, Walker did assert that she had additional expenses for counseling and private school tuition, but the budget she submitted does not list these expenses nor does she appear to argue now that those expenses are a basis for additional support. Thus, these expenses do not appear to be at issue in this appeal.
[41] In re Marriage of Stern, 68 Wash.App. 922, 932, 846 P.2d 1387 (1993).
[42] Id.
[43] 68 Wash.App. 922, 932, 846 P.2d 1387 (1993).
[44] 40 Md.App. 550, 392 A.2d 1149 (1978).
[45] 392 A.2d at 1152.
[46] Id.
[47] Id. (emphasis omitted).
[48] Id.
[49] In the event the trial court properly orders repayment of child support, we note that child support overpayment awards are not judgments subject to statutory interest provisions. In re Parentage of Fairbanks, 142 Wash.App. 950, 959, 176 P.3d 611 (2008).
[50] Leslie, 90 Wash.App. at 807, 954 P.2d 330.